CONTROL DATA CORPORATION v.
ALLAN GARRISON AND ANOTHER.

233 N. W. 2d 736.

September 19, 1975—No. 44928.

348

*Rischmiller & Wasche* and *Robert W. Rischmiller,* for appellants.

*Oppenheimer, Wolff, Foster, Shepard & Donnelly, Thomas P. Kane,* and *Wayne G. Faris,* for respondent.

Heard before Sheran, C. J., and Todd and Scott, JJ., and considered and decided by the court en banc.

SHERAN, CHIEF JUSTICE.

Appeal from a judgment in favor of plaintiff and against defendant and from prejudgment orders of the district court. We affirm.

The appeal follows an action instituted by Control Data Corporation (CDC) against Allan Garrison, individually and doing business as Garrison Construction Company, for damages which resulted when a commercial building constructed by Garrison and thereafter acquired by CDC proved defective.

Garrison owned and was in possession of the building site during construction. CDC took possession of the building originally as a tenant and acquired title approximately 8 months later, on October 1, 1969. Within a year, the northwest corner of the building had settled so much that this part of the structure was unsafe for occupancy and was evacuated to permit necessary reconstruction.

At the conclusion of the trial, the jury returned a special verdict, reading in part as follows:

"QUESTION 1: Did defendant Garrison represent to plaintiff Control Data, at the time of the events leading up to the sale here involved, that the office portion of the building in question was structurally sound?

"ANSWER: Yes

Yes or No

"QUESTION 2: If you answer Question 1 'Yes', then answer this question: Was that representation false?

"ANSWER: Yes

Yes or No

\* \* \* \* \*

"QUESTION 3: Did that representation have to do with a past or present fact?

"ANSWER: Yes

Yes or No

"QUESTION 4: Was the fact material?

"ANSWER: Yes

Yes or No

"QUESTION 5: Was that fact susceptible of knowledge?

"ANSWER: No

Yes or No

"QUESTION 6: Did defendant Garrison know that representation to be false, or in the alternative, assert it as of his or its own knowledge without knowing whether it was true or false?

"ANSWER: Yes

Yes or No

"QUESTION 7: Did defendant Garrison intend to have the plaintiff induced to act, or justified in acting upon it?

"ANSWER: Yes

Yes or No

"QUESTION 8: Was plaintiff Control Data induced to act or justified in so acting?

"ANSWER: Yes

Yes or No

"QUESTION 9: Did plaintiff Control Data act in reliance upon that representation?

"ANSWER: Yes

Yes or No

"QUESTION 10: Did plaintiff Control Data suffer damage?

"ANSWER: Yes
 Yes or No
"QUESTION 11: Was damage attributable to the misrepresentation so as to be the proximate cause of the damage?
"ANSWER: Yes
 Yes or No"

Damages in the amount of $106,000 were awarded to plaintiff.

The trial court directed that judgment be entered for plaintiff in the amount of $106,000. Defendant then moved for an order vacating and setting aside the special verdict and for an order granting judgment notwithstanding the verdict in favor of defendant or, in the alternative, for a new trial. These motions were denied. Judgment was entered, and this appeal followed.

An essential element in an action for fraud is that the fact misrepresented must be "susceptible of knowledge." Davis v. Re-Trac Mfg. Corp. 276 Minn. 116, 117, 149 N. W. 2d 37, 39 (1967); Vandeputte v. Soderholm, 298 Minn. 505, 508, 216 N. W. 2d 144, 146 (1974); Hanson v. Ford Motor Co. 278 F. 2d 586, 591 (8 Cir. 1960); Clements Auto Co. v. Service Bureau Corp. 298 F. Supp. 115, 125, affirmed, 444 F. 2d 169 (8 Cir. 1971). The parties have not cited any authority dealing with the precise meaning of the quoted words. Webster's New International Dictionary (2 ed. 1947) p. 2541, gives as the preferred meaning of the word "susceptible" this definition:

"* * * Of such a nature, character, or constitution as to admit or permit; capable of submitting successfully to the action, process, or operation;—with *of,* followed usually by an action noun (or, less often, a verbal noun); as, a theory *susceptible* of proof; a gem *susceptible* of a brilliant polish; a theme *susceptible* of being developed (or of development)."

The essential question on this appeal is whether the answer to special interrogatory No. 5 (asserting in effect that the unsound character of the construction was not susceptible of knowledge) can be reconciled with the answers to the other interroga-

tories and with the entry of judgment in favor of plaintiff. We affirm because, in our view, the evidence in this case establishes as a matter of law that the representation found to have been made by the defendant, i.e. that the portion of the building in question was structurally sound, was susceptible of knowledge. See, Hill v. Wilmington Chemical Co. 279 Minn. 336, 156 N. W. 2d 898 (1968); Majerus v. Guelsow, 262 Minn. 1, 113 N. W. 2d 450 (1962).

Plaintiff advanced two factual theories in support of its claim that the building was not structurally sound, as Garrison represented it to be: (1) That the soil composition was such as to provide inadequate support for the structure; and (2) that pilings driven into the ground to give additional support for the structure may have been broken during the pile-driving process, making the pilings unsuitable for the purpose intended.

It is clear to us that the load-bearing capacity of the ground on which a structure is built is subject to scientific analysis by appropriate borings and tests. Where, as here, a building is constructed by the person who owns and is in possession of the land, in the absence of evidence of extraordinary circumstances, not present here, we hold that the capacity of the building site to bear the load placed on it is susceptible of knowledge. Further, the evidence is clear that defendant had preconstruction knowledge of the peculiarities of the soil at the construction site which could have caused "negative load," a phenomenon which could explain the unusual deterioration of the foundation in the northwest section of the building.

The problem is complicated, however, by the fact that in this case the jury could have determined that the building settled, not because of the failure of the site-owning builder to ascertain the load-bearing potential of the site, but, instead, because pilings driven into the ground to give added support for the structure were sheared during the process in such a way as to make the support capacity of these pilings inadequate for the intended purpose.

Defendant calls our attention to testimony given by an expert called by plaintiff:

"Q. * * * [Do you] have an opinion as to the cause of the looseness of the piling you observed on the premises * * *?

"A. Yes, sir.

"Q. Will you please state that opinion?

 * * * * *

"THE WITNESS: I believe the pile was broken during driving.

 * * * * *

"Q. Could this phenomena * * * have been obtained without the knowledge of a Structural Engineer?

"A. Yes, sir.

"Q. Without the benefit of a Structural Engineer?

"A. Yes, sir.

"Q. So he, too, could have been fooled under the circumstances * * *?

"A. Yes, sir."

From this testimony defendant argues:

"* * * Taking the evidence in the light most favorable to support the jury's decision on a question of fact, the jury could find that the pilings were broken at the time they were driven in and that the plaintiff had failed to prove, as it had the burden of doing, that Garrison could reasonably have known of that fact at or prior to the time that the building was sold to CDC."

It must be conceded that the determination of whether a piling driven into the ground has remained intact would be difficult. It is entirely possible that in the ordinary situation the cost of making such an inspection would be excessive, in view of the likelihood of breakage to be discovered. But, however difficult ascertainment of the fact might have been, defendant, who owned and was in possession of the building site, who was responsible for the construction, and who, through his agent, drove the pilings into the ground, must, we believe, be held able, as a matter of law, to measure the in-place characteristics of his

work product, at least in the absence of extraordinary circumstances not disclosed by this record. A fact is "susceptible" of knowledge within the definition set out above, even though physical circumstances in a given situation make determination of that fact burdensome and difficult. The question is not whether defendant acted reasonably in assuming the pilings were intact. The question is whether a defective piling can be distinguished from one which is not defective. Except for the difficulty of making the required inspection, the fact was clearly ascertainable. It was therefore susceptible of knowledge within the meaning of the interrogatory submitted to the jury. We hold as a matter of law that the answer to interrogatory No. 5 should have been in the affirmative. This being so, the answers to the interrogatories are consistent and the trial court's conclusion that judgment should be entered in favor of plaintiff was correct.

Affirmed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.